IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

ASHLEY BLOODWORTH,              )
                               )
        Plaintiff,             )
                               )
v.                             )   Case No. 3:21-CV-120-SMD
                               )
KILOLO KIJAKAZI, Acting        )
Commissioner of Social Security, )
                               )
        Defendant.             )

## OPINION & ORDER

Plaintiff Ashley Bloodworth ("Bloodworth") applied for a period of disability and

disability insurance benefits ("DIB") on July 8, 2019, alleging she became disabled on June

1, 2018. (Tr. 139-40). Bloodworth's applications were denied at the initial administrative

level on September 13, 2019. (Tr. 115-20). She then requested and received a hearing

before an Administrative Law Judge ("ALJ"), who found on August 17, 2020, that

Bloodworth was not disabled. (Tr. 32-47). Bloodworth appealed to the Social Security

Appeals Council ("Appeals Council"), which denied review. (Tr. 3-8). Therefore, the

ALJ's order became the final decision of the Commissioner of the Social Security

Administration ("Commissioner"). *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

Bloodworth appeals under 42 U.S.C. § 405(g). For the following reasons, the undersigned

AFFIRMS the Commissioner's decision.[1]

---

[1] Under 28 U.S.C. § 636(c), the parties have consented to the undersigned Chief United States Magistrate
Judge conducting all proceedings and entering final judgment in this appeal. Pl.'s Consent (Doc. 21); Def.'s
Consent (Doc. 20).

## I.    STATUTORY FRAMEWORK

The Social Security Act establishes the framework for determining who is eligible to receive Social Security benefits. *Martin v. Sullivan*, 894 F.2d 1520, 1530 (11th Cir. 1990). In making a disability benefits determination, an ALJ employs a five-step process:

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or medically equal one of the specific impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?

20 C.F.R. § 404.1520(a); 20 C.F.R § 416.920(a)(4). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of not disabled." *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[2] A claimant bears the burden of proof through step four. *See Wolfe v. Chater*, 86 F.3d 1072, 1077 (11th Cir. 1996). The burden shifts to the Commissioner at step five. *Id.*

To perform the fourth and fifth steps, the ALJ must first determine the claimant's Residual Functional Capacity ("RFC"). *Phillips v. Barnhart*, 357 F.3d 1232, 1238-39 (11th Cir. 2004). A claimant's RFC is what the claimant can still do—despite her impairments—based on the relevant evidence within the record. *Id.* The RFC may contain both exertional and non-exertional limitations. *Id.* at 1242-43. Considering the claimant's RFC, the ALJ

---

[2] *McDaniel* is an SSI case. SSI cases arising under Title XVI of the Social Security Act are appropriately cited as authority in Title II cases, and vice versa. *See, e.g.*, *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 875 n.* (11th Cir. 2012) (per curiam) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

determines, at step four, whether the claimant can return to past relevant work. *Id.* at 1238.

If a claimant cannot return to past work, the ALJ considers, at step five, the claimant's

RFC, age, education, and work experience to determine if there are a significant number

of jobs available in the national economy she can perform. *Id.* at 1239. To determine if a

claimant can adjust to other work, the ALJ may rely on (1) the Medical Vocational

Guidelines ("Grids")[3] or (2) the testimony of a vocational expert ("VE").[4] *Id.* at 1239-40.

## II.     STANDARD OF REVIEW

A federal court's review of the Commissioner's decision is limited. A court will

affirm the Commissioner's decision if the factual findings are supported by substantial

evidence and the ALJ applied the correct legal standards. *Kelley v. Apfel*, 185 F.3d 1211,

1213 (11th Cir. 1999) (citing *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997)). A

court may reverse the Commissioner's final decision when it is not supported by substantial

evidence, or the proper legal standards were not applied in the administrative proceedings.

*Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). A court is required to give

deference to factual findings, with close scrutiny to questions of law. *Cornelius v. Sullivan*,

936 F.2d 1143, 1145 (11th Cir. 1991).

---

[3] The Grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. *See* 20 C.F.R. pt. 404 subpt. P, app. 2. Each factor can independently limit the number of jobs realistically available to an individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id.*

[4] A vocational expert is an "expert on the kinds of jobs an individual can perform based on his or her capacity and impairments." *Phillips*, 357 F.3d at 1240.

For purposes of judicial review, "[s]ubstantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Despite the limited nature of review, a court must scrutinize the record in its entirety and take account of evidence that detracts from the evidence relied on by the ALJ. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987); *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986). However, a court may not decide the facts anew or substitute its judgment for that of the Commissioner. *Cornelius*, 936 F.2d at 1145.

## III.   ADMINISTRATIVE PROCEEDINGS

Bloodworth was 42 years old on her alleged disability onset date. (Tr. 46). She has at least a high school diploma and past relevant work experience as a special education teacher. (Tr. 45-46). Bloodworth alleged disability due to lupus, cervical degenerative disc disease, bipolar disorder, borderline personality disorder, migraine headaches, attention-deficit hyperactivity disorder, anxiety, hypothyroidism, stage three chronic kidney disease, and obesity. (Tr. 37-38).

In the administrative proceedings, the ALJ made the following findings with respect to the five-step evaluation process for Bloodworth's disability determination. At step one, the ALJ found Bloodworth had not engaged in substantial gainful activity since June 1, 2018, her alleged onset date. (Tr. 37). At step two, the ALJ found Bloodworth suffers from the following severe impairments: lupus, cervical degenerative disc disease, bipolar disorder, borderline personality disorder, migraine headaches, attention-deficit hyperactivity disorder, and anxiety. (Tr. 37). At step three, the ALJ found Bloodworth does

not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 38).

The ALJ proceeded to determine Bloodworth's RFC, holding she has the capacity to perform light work as defined by 20 C.F.R. § 404.1567(b) with some significant additional postural, environmental, and mental limitations. (Tr. 40-41). At step four, the ALJ found that Bloodworth cannot perform any past relevant work. (Tr. 45). At step five, the ALJ, considered Bloodworth's age, education, work experience, and RFC and found that jobs exist in significant numbers in the national economy that Bloodworth can perform. (Tr. 46). Accordingly, the ALJ found Bloodworth was "not disabled" from June 1, 2018, through the decision date of August 17, 2020. (Tr. 47).

## IV.   BLOODWORTH'S ARGUMENTS

Bloodworth asserts that the ALJ committed three reversible errors. First, Bloodworth contends that "[t]he ALJ failed to properly evaluate the medical opinion evidence in determining [her] mental residual functioning capacity." Pl.'s Br. (Doc. 13) at 2. Second, Bloodworth argues that "[t]he ALJ relied on a flawed hypothetical question to the vocational expert." *Id.* Third, Bloodworth argues that "[t]he ALJ failed to properly evaluate the subjective statements of Ms. Bloodworth and her husband." *Id.* Because the undersigned finds the ALJ's opinion was supported by substantial evidence and the ALJ committed no reversible legal errors, the Court affirms the final decision of the Commissioner.

V.   ANALYSIS

A.  The ALJ properly evaluated the medical source opinions.

Bloodworth argues the ALJ incorrectly considered the medical source opinions when determining Bloodworth's mental RFC. Specifically, Bloodworth contends the ALJ found Dr. Robert Estock's opinion persuasive but failed to conform Bloodworth's mental RFC to Dr. Estock's recommendation. Pl.'s Br. (Doc. 13) at 4. Bloodworth also claims the ALJ did not cite to any specific evidence in reaching her mental RFC. *Id.* at 7.

When evaluating a medical opinion's persuasiveness, an ALJ may consider the factors of supportability, consistency, relationship with the claimant, specialization, and other facts tending to support or contradict the opinion. 20 C.F.R. § 404.1520c(c)(1)-(3). Supportability and consistency are the most important factors. 20 C.F.R. § 404.1520c(b)(2). While an ALJ need not articulate how he applied each factor to the medical source opinion, the ALJ must state more than broad conclusions, at least with respect to supportability and consistency. *Works v. Saul*, 2021 WL 690126, at *15 (N.D. Ala. Feb. 23, 2021). Otherwise, a reviewing court cannot meaningfully assess the ALJ's consideration of the opinion. *Id.*

Determining a claimant's RFC is best left to the ALJ's discretion, so long as the ALJ's holding is supported by substantial evidence. *See Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 486 (11th Cir. 2012). The ALJ arrives at an RFC by reviewing the record as a whole, not by focusing on one piece of evidence to the exclusion of all others. 20 C.F.R. § 404.1545(a)(1) ("Your residual functional capacity is the most you can still do despite your limitations. We will assess your residual functional capacity based on all the relevant evidence in your case record."). As noted, this Court's review of an ALJ's

RFC is limited in scope, and this Court will not reweigh the evidence presented to the ALJ or substitute its judgment for the Commissioner's. *Cornelius*, 936 F.2d at 1145. In fact, as the Eleventh Circuit has acknowledged, "[e]ven if the evidence preponderates against the [ALJ's] findings, [the Court] must affirm if the decision reached is supported by substantial evidence." *Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1314 (11th Cir. 2021) (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004)).

Here, the ALJ did not improperly evaluate Dr. Estock's opinion, and substantial evidence supports the ALJ's consideration of the record as a whole in determining Bloodworth's mental RFC. First, Bloodworth's argument that the ALJ should have adopted Dr. Estock's opinion completely as Bloodworth's mental RFC is unfounded. As numerous courts have acknowledged, an ALJ is authorized—even required—to consider the record as a whole in determining a claimant's RFC. *See, e.g.*, *Moore v. Soc. Sec. Admin., Comm'r*, 649 F. App'x 941, 945 (11th Cir. 2016) ("[T]he task of determining a claimant's [RFC] and ability to work rests with the [ALJ], not a doctor."); *Billups v. Colvin*, 2013 WL 6840383, at *8 (M.D. Ala. Dec. 27, 2013). It would be antithetical to this directive for an ALJ to simply adopt a medical source opinion, even if persuasive, as a claimant's RFC without contemplating the rest of the evidence. Thus, while the ALJ found Dr. Estock's opinion to be persuasive, he was not required to accept Dr. Estock's limitations verbatim. The ALJ properly defined Bloodworth's mental RFC based on an examination of the entire record, including Dr. Estock's opinion. This was not reversible legal error.

Second, Bloodworth's argument that the ALJ did not cite to specific evidence in articulating Bloodworth's mental RFC is not accurate. The ALJ carefully considered and

summarized the relevant evidence—medical and subjective—in reaching Bloodworth's mental RFC. (Tr. 42-43). The ALJ devoted over a page in his decision to discussing Bloodworth's subjective complaints and his medical records to explain his mental RFC holding. (Tr. 42-43). This was sufficient, and the ALJ's mental RFC finding is supported by substantial evidence. Consequently, the ALJ did not by failing to point to specific record evidence to support his mental RFC finding.

## B.  The ALJ did not err in his questioning of the VE.

Bloodworth argues the ALJ improperly omitted her moderate restrictions in concentration, persistence, or pace in his hypothetical to the VE. Pl.'s Br. (Doc. 13) at 7. Bloodworth acknowledges that the ALJ found that she possesses "moderate limitations (1) understanding, remember[ing], or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing herself." *Id.* at 8 (internal quotation marks omitted). However, Bloodworth contends that the hypothetical to the VE "only limited [her] mentally to understand, retain, and carry out simple but not complex instructions with few workplace changes; no more than occasional decision-making with respect to work-related activities; avoiding interaction with the public except for incidental contact such as providing directions to the restroom; and no more than occasional interaction with supervisors." *Id*. Bloodworth argues that this is problematic because "[t]hese limitations say nothing about the restrictions found in [her] ability to concentrate over a period of time, maintain a work pace over the course of a workday or workweek, nor do they describe limitations in [her] ability to persist at tasks[.]" *Id.* at 8-9.

Bloodworth and the Commissioner submit competing caselaw to support their respective arguments. Bloodworth cites cases purporting to establish that an ALJ's failure to account for a moderate limitation in concentration, persistence, or pace in hypothetical question to a VE is automatically reversible error. *Id.* at 7-9. Meanwhile, the Commissioner refers to cases allegedly showing the exact opposite, which is that limiting a claimant to simple, routine tasks in questions to a VE adequately accounts for moderate limitations in concentration, persistence, or pace when medical evidence in the record establishes the claimant can perform simple, routine tasks despite moderate limitations. Comm'r Resp. (Doc. 18) at 9-10.

In consolidating the caselaw cited by the parties, the proper inquiry is whether medical evidence exists in the record establishing that Bloodworth can perform simple, routine tasks despite her moderate limitations in concentration, persistence, or pace. If so, the ALJ did not error; if not, the ALJ erred in forming his question to the VE. Because the objective medical evidence demonstrates Bloodworth could perform simple, routine tasks despite her moderate limitations in concentration, persistence, or pace, the ALJ did not commit reversible error in his questioning of the VE.

The medical records, which the ALJ highlighted, show Bloodworth presented for psychological testing in June 2018. That testing revealed that Bloodworth's "fine and gross motor skills were within normal limits, *her attention and concentration were within normal limits*, her memory was intact, there were no cognitive limitations, and her affect was alert, despite her frustrated and anxious mood." (Tr. 42) (emphasis added). Accordingly, given that Bloodworth's attention, concentration, motor skills, memory, and cognitive abilities

were all within normal ranges, medical evidence exists in the record demonstrating that Bloodworth could perform simple, routine tasks despite her moderate limitations. The ALJ, therefore, did not err in incorporating Bloodworth's moderate concentration, persistence, and pace limitations in his question restricting her to simple, routine tasks.

### C. The ALJ appropriately evaluated Bloodworth's subjective testimony.

Bloodworth contends the ALJ erred in evaluating and rejecting her subjective testimony about her symptoms. Particularly, Bloodworth claims the ALJ committed three reversible errors in holding that her subjective testimony was not entirely consistent with the medical proof. Pl.'s Br. (Doc. 13) at 11-13. First, Bloodworth contends the ALJ "erred by suggesting that mental status examinations did not document any significant abnormalities that could cause [her alleged] limitations[.]" *Id.* at 11. Second Bloodworth argues that "[t]he ALJ [ ] erred by discounting [her] allegations because she was noted to be 'stable' in some treatment records." *Id.* at 12. Third, Bloodworth asserts that the ALJ erred by equating a lack of disability with her ability to "engage in some activities of daily living[.]" *Id.* Because the ALJ's decision is supported by substantial evidence, and each of Bloodworth's arguments essentially asks this Court to impermissibly reweigh the evidence and substitute the undersigned's judgment for the ALJ's, the Court finds no reversible legal error.

A Social Security claimant may prove disability through subjective testimony about their symptoms. *Markuske v. Comm'r of Soc. Sec.*, 572 F. App'x 762, 766 (11th Cir. 2014). To establish disability through subjective complaints, a claimant must provide: "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence

confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). A claimant's testimony coupled with evidence meeting this standard "is itself sufficient to support a finding of disability." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citations omitted). In evaluating a claimant's subjective symptoms, the ALJ may consider a variety of factors, including: objective medial evidence, treatment history, response to medication and other treatments, sources of pain relief, and the claimant's daily activities. *See* 20 C.F.R. §§ 404.1529(c)(1)-(4). If an ALJ rejects a claimant's testimony, the ALJ "must articulate explicit and adequate reasons for doing so." *Wilson*, 284 F.3d at 1225.

Here, the ALJ reviewed Bloodworth's complaints and found that her "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (Tr. 42). The ALJ also held that Bloodworth's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[.]" (Tr. 42). Prior to reaching these holdings, however, the ALJ summarized Bloodworth's subjective complaints about her alleged disability. (Tr. 41-42). Moreover, the ALJ carefully detailed the medical proof he used to find that Bloodworth's statements were not entirely consistent with her treatment and diagnostic records. (Tr. 42-44).

Given the ALJ's exhaustive review of Bloodworth's testimony and her medical records, the Court finds the ALJ properly evaluated Bloodworth's subjective complaints. The ALJ explicitly discussed the "objective medical evidence," Bloodworth's "treatment

11

history," Bloodworth's "response to medication," and Bloodworth's "daily activities." *See*

20 C.F.R. §§ 404.1529(c)(1)-(4). For instance, when referring to a June 2018 psychological

testing appointment, the ALJ noted that Bloodworth's "mental status examination

indicated minimal cognitive difficulty. Specifically, [Bloodworth's] fine and gross motor

skills were within normal limits, her attention and concentration were within normal limits,

her memory was intact, there were no cognitive limitations, and her affect was alert, despite

her frustrated and anxious mood." (Tr. 42). Likewise, the ALJ found that "[a] further

review of the subsequent medical evidence reveals that [Bloodworth's] mental status

examinations have been relatively stable and responsive to counseling and therapy." (Tr.

42). The ALJ added that "[c]ounseling records from July and August 2019 also note

improved mood and affect with more stability, positivity, and intact functional status." (Tr.

42) (internal transcript citation omitted). Discussing records from Bloodworth's

appointment with Dr. McPherson in April 2020, the ALJ noted that Bloodworth "still felt

pretty anxious, but she noted that her anxiety is stable now and she felt like it will continue

to improve over time." (Tr. 42).

Moreover, the ALJ discussed Bloodworth's response to medication regarding her

physical impairments. The ALJ noted that "recent treatment notes have typically reported

normal musculoskeletal findings. For example, in January 2019, [Bloodworth] did not have

any tender points, she exhibited normal muscle strength, normal range of motion, and no

edema, and she even had slight improvement in her generalized fatigue and shoulder pain

while on Prednisone." (Tr. 43). As to urological symptom relief from medication, the ALJ

declared, "The claimant also followed up with urology associate, Alyssa Francisco, NP,

with regards to her urinary frequency and nocturia in February 2020, at which time she reported doing very well with medication." (Tr. 43).

Finally, the ALJ considered Bloodworth's daily life. The ALJ observed that Bloodworth "reported that she remains able to take care of her young children, handle her personal care, prepare meals, perform housework, drive a car, go out alone, shop in stores, manage money, read, craft, and attend church." (Tr. 43). From this survey of Bloodworth's activities, the ALJ concluded that "[w]hile the undersigned acknowledges that Bloodworth has some limitations performing these activities . . . taken together and considered in conjunction with the above medical evidence of record, they suggest that [Bloodworth] can perform work within the above parameters on a sustained and continuous basis." (Tr. 43).

Substantial evidence supports the ALJ's treatment of Bloodworth's subjective testimony. The ALJ thoroughly compared Bloodworth's complaints with her medical records and her daily activities. From those medical records and daily activities, the ALJ reasonably concluded that Bloodworth's complaints, such as her complete inability to work because of fatigue and depression, were not consistent with the evidence as a whole. Bloodworth essentially asks this Court to ignore the records highlighted by the ALJ in favor of other references in the records more amenable to Bloodworth's position. Pl.'s Br. (Doc. 13) at 11-13. This is an impermissible invitation to reweigh the evidence. Indeed, even if this Court disagreed with the ALJ's conclusion, so long as the ALJ's decision is supported by substantial evidence, this Court must affirm. *Viverette*, 13 F.4th at 1314 (quoting *Crawford*, 363 F.3d at 1158-59). Here, the ALJ's decision is supported by

substantial evidence; thus, the ALJ did not commit reversible legal error in his assessment of Bloodworth's subjective complaints.

Bloodworth also claims the ALJ did not properly consider the third-party function report provided by Bloodworth's husband. *Id.* In addressing Mr. Bloodworth's third-party function report, the ALJ found the statement "unpersuasive, as it is a lay opinion based upon casual observation, rather than objective medical examination and testing" and further "influenced by loyalties of family." (Tr. 45). The ALJ concluded that "[i]t certainly does not outweigh the accumulated medical evidence discussed above regarding the extent to which [Bloodworth's] impairments limit her functional abilities" and found it unpersuasive "for the same reasons set forth above in finding the claimant's allegations to be less than wholly consistent." (Tr. 45).

The undersigned finds that Mr. Bloodworth's third-party report is duplicative of Bloodworth's own testimony, which the ALJ had already rejected. Courts within the Eleventh Circuit have agreed that an ALJ need not explicitly consider a third-party function report that is merely duplicative of the claimant's own unpersuasive testimony. *See, e.g.*, *East v. Barnhart*, 197 F. App'x 899, 901 n.3 (11th Cir. 2006) ("East also complains that the ALJ failed explicitly to accept or reject the daily activities questionnaire completed by her mother, Linda Boggs. Because Bogg's statements in the questionnaire duplicated . . . East's testimony, which the ALJ explicitly found not credible, it is 'obvious' . . . the ALJ implicitly rejected Bogg's statements."); *Wrease v. Kijakazi*, 2022 WL 4134782, at *3-4 (S.D. Ga. Aug. 4, 2022) ("[P]laintiff cannot point to any harm arising from the ALJ's failure to mention (or even failure to consider) Plaintiff's ex-wife's third-

party function report because the report was simply cumulative of Plaintiff's own reports and testimony, and the ALJ expressly considered and rejected Plaintiff's own claimed subjective symptoms.").

Mr. Bloodworth's report provided a few more details about Bloodworth's alleged disability than Bloodworth's own report; yet a comparison of the reports demonstrates that those differences are not material enough to differentiate the third-party statements from Bloodworth's own report. The undersigned offers a few examples to illustrate the minor differences. Bloodworth's report stated that she could drive alone, and Bloodworth offered no further explanation. (Tr. 185). Meanwhile, Mr. Bloodworth's report stated that Bloodworth "does frequently get lost or misses turns. Uses GPS on phone to navigate frequently." (Tr. 195). Likewise, when discussing her ability to get along with others, Bloodworth provided that she is "doing much better but [her] borderline personality disorder often causes problems in relationships." (Tr. 187). Mr. Bloodworth said that "[s]he has significant effects of borderline personality disorder. She takes offense easily at perceived slights and holds people in disdain for events from years past. When she becomes upset, she frequently rages way beyond proportion to the circumstances. It has seriously affected our marriage." (Tr. 197). Finally, Bloodworth said that she could not follow spoken instruction well at all and indicated that they should "be short and succinctly spoken." (Tr. 187). Mr. Bloodworth said that "[i]f short and not detailed[,] she does OK. For complicated tasks[,] instructions have to frequently repeated." (Tr. 197).

The reports of Bloodworth and her husband are substantially duplicative. Mr. Bloodworth's report provides some further details about the effects on Bloodworth from

15

her alleged disability than Bloodworth's own report. Those effects, however, are not materially different from Bloodworth's own testimony, and they do not change Bloodworth's disability. The two reports, instead, cover the same subject matter with different words. Thus, Mr. Bloodworth's third-party function report is merely duplicative of Bloodworth's own report. The ALJ, consequently, was not required to expressly consider the third-party function report given that the ALJ had already rejected Bloodworth's own subjective statements.

## VI.   CONCLUSION

Accordingly, it is ORDERED that the Commissioner's decision is AFFIRMED. A separate final judgment will issue.

DONE this 27th day of February, 2023.

Stephen M. Doyle
CHIEF U.S. MAGISTRATE JUDGE